IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TINA HUNTER, *et al.*,  )
                                     Plaintiff,  )
v.  )  Civil Action No. 3:17CV348–HEH
NHCASH.COM, LLC *et al.*,  )
                                     Defendants.  )

**MEMORANDUM OPINION**
(Granting LTD Financial Services, L.P.'s Motion to Dismiss)

THIS MATTER is before the Court on Defendant LTD Financial Services, L.P.'s ("Defendant") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) and the doctrine of *forum non conveniens*, filed on July 13, 2017. (ECF No. 16.) Defendant has been afforded the opportunity to reply to Plaintiff's Opposition to the Motion (ECF No. 30), but has not done so. Accordingly, the matter is ripe for disposition. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court and argument would not aid in the decisional process. E.D. Va. Local Civ. R. 7(J). For the reasons discussed herein, Defendant's Motion will be granted.

### I. BACKGROUND

Tina Hunter, Stephen Pike, Dawn Mays-Johnson, Julie Johnson, and Dianne Turner (collectively, "Plaintiffs") filed the instant Class Action Complaint ("Complaint") alleging, *inter alia*, that Defendant violated certain provisions of the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (ECF No. 1.) Plaintiffs generally allege that Defendant, a debt-collection agency, worked systematically to collect or attempt to collect illegal loans.[1] (Compl. ¶¶ 79–82.) Defendant allegedly sent Plaintiff Johnson a dunning letter on or around September 28, 2016, in an attempt to collect on Johnson's debt. (*Id.* ¶ 85.) The letter identified Johnson's debt as $1,061.59 and indicated that the communication was "an attempt to collect a debt and any information obtained will be used for that purpose." (*Id.* ¶¶ 86, 88.) Johnson received "additional correspondence" from Defendant, including another collection letter dated October 6, 2016. (*Id.* ¶ 89.) Plaintiff Turner also received a collection letter from Defendant. (*Id.* ¶ 91.) Upon information and belief, Plaintiffs assert that Defendant used form letters in its debt collection efforts. (*Id.* ¶ 92.)

Based on these collection practices, Plaintiffs allege that Defendant violated the FDCPA by: (1) sending letters containing validation notices that "falsely" stated that Plaintiffs owed money for an usurious—and therefore illegal—debt, in violation of 15 U.S.C. § 1692g(a)(1); (2) sending letters that misstated the legal status of Plaintiffs' debts, i.e., that the debts were legal and enforceable, in violation of 15 U.S.C. § 1692e; and (3) attempting to and actually collecting "debts that were void and unenforceable under Virginia law," in violation of 15 U.S.C. § 1692f. (*Id.* ¶¶ 132, 141, 150.) The Complaint asserts that Plaintiffs accordingly seek actual damages, statutory damages, and reasonable attorney's fees and costs. (*Id.* ¶¶ 133, 142, 151.)

---

[1] The loans at issue in this case were created when Plaintiffs each executed an Open-end Credit Account Agreement ("Agreement") with Defendant NHCash.com, LLC. Plaintiffs allege that the loans are illegal and unenforceable because they are premised on usurious interest rates. (Compl. ¶¶ 43–55.)

In the instant Motion, Defendant seeks dismissal of Plaintiffs' FDCPA claims (Counts IV, V, and VI of the Complaint) on two separate grounds. First, Defendant incorporates the arguments set forth in the Brief in Support of NHCash Defendants' Motion to Dismiss[2] (ECF No. 15) to assert that the Agreements preclude Plaintiffs from filing suit in this Court, based on the forum selection and arbitration provisions contained therein. (Br. Supp. Mot. Dismiss 1 n.1, 3–6, ECF No. 17.) Second, Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs' FDCPA claims because "Plaintiffs have failed to assert a concrete injury necessary to give them standing in this case." (*Id.* at 9.)

## II. LEGAL STANDARDS[3]

### A. 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). As recognized by the Fourth Circuit, "[t]here are two critically different ways in which to present a motion to dismiss for lack of subject matter jurisdiction" under Rule 12(b)(1). *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). First, a defendant may challenge jurisdiction facially and "contend 'that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based.'" *Kerns*

---

[2] The "NHCash Defendants" are NHCash.com, LLC, NHCash SPV, LLC, NHCash Holdings, Inc., and Steven Mello.

[3] Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, jurisdiction is a threshold matter, and the Court's analysis must begin—and in this case, end—with a jurisdictional analysis. *Id.* Because the Court finds that Plaintiffs have not alleged facts sufficient to confer standing, it need not address Defendant's arguments grounded on Federal Rule of Civil Procedure 12(b)(3) or the doctrine of *forum non conveniens*.

3

*v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Bain*, 697 F.2d at 1219). "In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Bain*, 697 F.2d at 1219.

Alternatively, a defendant may challenge jurisdiction factually and "contend . . . 'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns*, 585 F.3d at 192 (alteration in original) (quoting *Bain*, 697 F.2d at 1219). When—and only when—a defendant takes this latter position, "'[a] trial court may . . . go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations,' without converting the motion to a summary judgment proceeding." *Id.* (quoting *Bain*, 697 F.2d at 1219).

In this case, the Court understands Defendant to be bringing a facial challenge to standing. Accordingly, the Court's analysis is confined to the facts as pled in the Complaint.

## B. Standing

The Supreme Court has established that the "irreducible constitutional minimum" of standing includes three elements: (1) an injury-in-fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 136

4

S. Ct. 1540, 1547 (2016) (as revised May 24, 2016) (quoting *Warth v. Seldin*, 422 U.S. 518 (1975)).

In order to show injury-in-fact at the pleading stage, a plaintiff must allege "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). To satisfy the concreteness requirement, a plaintiff must allege an injury—either tangible or intangible—that actually exists. *Id.* at 1548–49. The Supreme Court has made clear that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. However, in certain limited circumstances the statutory violation itself may be sufficient to satisfy the concrete injury requirement, because the violation creates "the *risk* of real harm." *Id.* (emphasis added).

In determining whether an intangible harm—in this case, the harm created by a bare statutory violation—constitutes a concrete injury, "both history and the judgment of Congress play important roles." *Id.* Specifically, a court should "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* A court should also consider whether Congress sought to prevent a particular type of harm by "elevat[ing] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law," and whether the statutory violation alleged implicates that specific harm. *Id.* (quoting *Lujan*); *see also Dreher v. Experian Info. Sol's, Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) (finding persuasive the D.C. Circuit's reasoning that "a plaintiff suffers a concrete . . . injury where he is denied access to

5

information required to be disclosed by statute, and he 'suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure.'" (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016))). In such a case, "a plaintiff . . . need not allege any additional harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549.

## III. ANALYSIS

The entirety of Plaintiffs' Complaint with regard to Defendant distills to an allegation that Defendant violated various provisions of the FDCPA by representing that Plaintiffs' debts to the NHCash Defendants were enforceable and by attempting to collect those debts. (*See* Compl. ¶¶ 5, 79–92, 132, 141, 150.) However, it appears undisputed that the Complaint is devoid of any reference to Plaintiff suffering any actual harm as a result of these alleged violations. (*See* Br. Opp. Mot. Dismiss 4, 21–23 (conflating the standard of review for facial and factual standing challenges and attempting to supplement the Complaint with declarations from certain Plaintiffs that they suffered anxiety, emotional distress, and frustration as a result of Defendant's conduct.) Because Defendants have raised a facial challenge to Plaintiffs' standing, the Court cannot look beyond the face of the Complaint in its 12(b)(1) analysis. *See Bain*, 697 F.2d at 1219. Therefore, the Court concludes that Plaintiffs have failed to allege any facts to support an assertion that they suffered any harm other than the bare statutory violation.

Absent such allegations, the Court must determine whether the facts alleged in the Complaint support a finding that Plaintiffs suffered a "risk of real harm" that is likely to occur in the future. *Spokeo*, 136 S. Ct. at 1549. The Court finds that the Fourth Circuit's

recent decision in *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017), lends instructive clarity to the analysis.

In *Beck*, the court consolidated two cases that involved data breaches at the Dorn Veterans Affairs Medical Center ("Dorn VAMC") in Columbia, South Carolina. *Id.* at 267–68. The plaintiffs alleged that both data breaches constituted violations of the Privacy Act. *Id.* at 266–68. However, they did not "allege that Dorn VAMC's violations of the Privacy Act alone constitute[d] an Article III injury-in-fact." *Id.* at 271 n.4. Rather, the plaintiffs argued that, as a result of the data breach-violations, they suffered concrete injury in the form of a future risk of harm of identity theft. *Id.* at 266–67. The Fourth Circuit found that the plaintiffs' speculative allegations were "insufficient to establish a 'substantial risk' of harm" necessary to show concrete injury. *Id.* at 275. Consequently, it held that plaintiffs' abstract claim of harm was inadequate to confer standing. *Id.* at 276–67.

In the present case, the Court concludes that the facts alleged in the Complaint are insufficient to support a reasonable inference that Plaintiffs faced an impending risk of actual harm from Defendant's violations.[4] Thus, Plaintiffs cannot claim standing on this "real risk of harm" ground, either.

---

[4] The Court recognizes that some courts, including two in this District, have found that alleged violations of the FDCPA can indeed create a risk of real harm for a plaintiff because certain debt collection practices can "detrimentally affect[] [a] debtor's decisions regarding his debt." *Biber v. Pioneer Credit Recovery, Inc.*, 229 F. Supp. 3d 457, 465 (E.D. Va. 2017) (collecting cases); *see also Brown v. R&B Corp. of Va.*, No. 2:17cv107(MSD), 2017 WL 3224728, at *16–19 (E.D. Va. July 28, 2017) (citing *Biber*). However, nothing alleged in the Complaint suggests that Plaintiffs felt pressured to make payments on the NHCash loans or that Plaintiffs made detrimental decisions regarding their debts as a result of Defendant's actions. Accordingly, the Court does not follow the courts in *Biber* and *Brown*, and it cannot find that Plaintiffs' allegations satisfy Article III standing.

The lone remaining avenue for Plaintiffs to assert standing would therefore be demonstrating that the statutory provisions allegedly violated are Congressional codifications of causes of action where recovery has been long permitted at common law. *See Spokeo*, 136 S. Ct. at 1549; *see also id.* at 1553 (Thomas, J., concurring) (emphasizing that it is the plaintiff's burden to demonstrate harm). Plaintiffs have suggested no "common law analogue" for their alleged FDCPA injury, however, and there appears to be "no traditional right of action in common law that is comparable." *Dreher*, 856 F.3d at 345. Moreover, because the Complaint alleges no harm other than mere statutory violations, the Court has no basis for finding that Plaintiffs "suffer[ed] . . . the type of harm Congress sought to prevent [with the statutory provisions at issue]." *Id.* (first alteration in original) (emphasis omitted) (quoting *Friends of Animals*, 828 F.3d at 992).

As a result, the Court must conclude that Plaintiffs' bare allegations of statutory violations are insufficient to confer standing in this case. This does not mean that Plaintffs could never have standing to bring an action to recover for the FDCPA violations presently alleged; they must simply plead some concrete harm in order to satisfy the injury-in-fact requirement of Article III.

## IV. CONCLUSION

Based on the foregoing, Counts IV, V, and VI of the Complaint will be dismissed without prejudice. An appropriate Order will accompany this Memorandum Opinion.

8

The clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

/s/
Henry E. Hudson
United States District Judge

Date: Sept. 12, 2017
Richmond, VA