IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TINA HUNTER, *et al.*,

    Plaintiffs,

v.

NHCASH.COM, LLC, *et al.*,

    Defendants.

Civil Action No. 3:17cv348-HEH

**MEMORANDUM OPINION**
(Denying in Part and Granting in Part Defendants' Motion to Dismiss)

THIS MATTER is before the Court on Defendants NHCash.com, LLC ("NHCash"), NHCash SPV, LLC ("SPV"), NHCash Holdings, Inc. ("Holdings"), and Steven Mello's (collectively, "Defendants") Motion to Dismiss. (ECF No. 14.) Defendants seek dismissal on two grounds, both stemming from the Open-end Credit Account Agreement ("Agreement") each Plaintiff executed with NHCash. First, Defendants argue that venue is improper because Plaintiffs waived their right to bring suit in any forum other than small claims court. Second, Defendants contend that, to the extent Plaintiffs seek to bring claims inappropriate for the jurisdictional limit of small claims court, Plaintiffs agreed to resolve any such claims through individualized and binding arbitration. (Br. Supp. Mot. Dismiss 1, ECF No. 15.)

The issues have been fully briefed, and the matter is ripe for decision. The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the

1

decisional process. E.D. Va. Local Civ. R. 7(J). For the reasons stated herein, the Court will deny in part and grant in part Defendants' Motion to Dismiss.

## I. BACKGROUND

On May 5, 2017, Plaintiffs filed a Class Action Complaint in this Court, alleging, *inter alia*, that Defendants violated the RICO Act, 18 U.S.C. § 1962(c) and (d), and Virginia's anti-usury statute, Va. Code § 6.2-305(A). (Compl. ¶¶ 104, 114, 124, ECF No. 1.) Defendants constitute a joint enterprise involved in the origination and funding of short term loans. (*Id.* ¶¶ 2, 13–16, 20–21.) NHCash operates a website through which borrowers apply for loans. (*Id.* ¶ 13.) After NHCash receives an application it originates a loan, which it then assigns to SPV. (*Id.* ¶ 14.) SPV's role is to secure third-party financing for the loans. (*Id.*) Holdings is the parent corporation of NHCash. (*Id.* ¶ 15.) Steven Mello is the founder, owner, and sole operator of all three entities, and in that capacity he "participated in the underwriting, servicing, marketing, and collection" of Plaintiffs' loans. (*Id.* ¶ 16.)

At the center of this dispute are the Agreements that Plaintiffs executed with NHCash when taking out their respective loans. Plaintiffs, as borrowers, each filled out and electronically signed a form Agreement over the internet. (*Id.* ¶ 44.) The Agreements set the interest rate for Plaintiffs' loans at or around thirty-six percent (36%). (*Id.* ¶ 46; Compl. Ex. 1, at 1.) The Agreements all contained a provision entitled "Arbitration," which primarily provided that "[a]ny claim or dispute arising from or in any way related to the Agreement must be resolved by binding arbitration . . . ." (Compl. Ex. 1, at 5.) The arbitration provision also established that "[n]othing in our agreement to arbitrate is

intended to prevent either of us from filing a lawsuit in an appropriate small claims court for an amount that does not exceed that courts jurisdictional limit; however all other disputes must be arbitrated." (*Id.*)

## II. STANDARD OF REVIEW

"[A] motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006). Similarly, because "the Supreme Court has characterized an arbitration clause as 'a specialized kind of forum-selection clause[,]'" the Court must analyze the Agreements' disputed arbitration provision under Rule 12(b)(3) as well.[1] *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365 n.9 (4th Cir. 2012) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)).

"On a motion to dismiss under Rule 12(b)(3), the court is permitted to consider evidence outside the pleadings." *Aggarao*, 675 F.3d at 365–66 (citing *Sucampo Pharms.*, 471 F.3d at 550). To survive a motion to dismiss for improper venue, a plaintiff must make a *prima facie* showing of proper venue—in this case, a showing that the arbitration provision does not control Plaintiffs' claims against Defendants. *Id.* (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). In resolving disputes over venue, a court must view the facts in the light most favorable to the plaintiff. *Id.* (citing *Global Seafood, Inc.*

---

[1] Based on the Supreme Court's characterization of arbitration clauses, the Court disregards Defendants' proposal that it alternatively analyze the Motion to Dismiss under either Rule 12(b)(1) or the doctrine of *forum non conveniens*. Therefore, to the extent that Defendants challenge the Court's subject matter jurisdiction and seek dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and the doctrine of *forum non conveniens*, their Motion will be denied.

3

*v. Bantry Bay Mussels, Ltd.*, 659 F.3d 221, 224 (2d Cir. 2011). However, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

## III. ANALYSIS

The first issue for the Court to determine is whether the Agreements' purported forum selection clause limiting litigation to small claims court is enforceable. Because the Court finds that it is not, the Court must additionally determine whether the remainder of the arbitration provision is enforceable in this instance, such that the Court must stay the case and compel arbitration.[2]

### A. Forum Selection: Small Claims Court

The Agreements provide that "[n]othing in our agreement to arbitrate is intended to prevent either of us from filing a lawsuit in an appropriate small claims court for an amount that does not exceed that courts [sic] jurisdictional limit; however all other disputes must be arbitrated." (Compl. Ex. 1, at 5.) Defendants argue that, to the extent Plaintiffs wish to litigate their claims instead of submitting the dispute to arbitration, Plaintiffs must file such claims in General District Court. (Br. Supp. Mot. Dismiss 8.) Plaintiffs argue that the forum selection clause is unenforceable. (Opp. Mot. Dismiss 2–4, ECF No. 22.) For the reasons stated below, the Court agrees with Plaintiffs.

---

[2] Defendants seek dismissal on the basis of the arbitration provision. However, the proper action for the Court is to stay ongoing judicial proceedings and to compel arbitration. *See Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999) ("When a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the F[ederal] A[rbitration] A[ct] commands the federal courts to *stay* any ongoing judicial proceedings, 9 U.S.C. § 3, and to compel arbitration, *id.* § 4." (emphasis added)).

4

"[T]he Supreme Court has consistently accorded choice of forum and choice of law provisions presumptive validity, rejecting the 'parochial concept' that 'notwithstanding solemn contracts . . . all disputes must be resolved under our laws and in our courts.'" *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972)) (collecting cases). "But the presumption of enforceability that forum selection and choice of law provisions enjoy is not absolute and, therefore, may be overcome by a clear showing that they are 'unreasonable under the circumstances.'" *Id.* (quoting *The Bremen*, 407 U.S. at 10). "Choice of forum and law provisions may be found unreasonable if (1) their formation was induced by fraud or overreaching; (2) the complaining party will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state." *Id.* (internal quotations omitted) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); *The Bremen*, 407 U.S. at 12–13, 15, 18).

The Court finds that the forum selection clause in the Agreements is unreasonable in this case because, among other things, its enforcement would deprive Plaintiffs of the remedies available under the RICO Act. Pursuant to that Act, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor *in any appropriate United States district court* and shall recover threefold the damages he sustains and the cost of the suit . . . ." 18 U.S.C. § 1964 (emphasis added). In contrast, the forum selection clause in the Agreements limits signatories to "filing a

5

lawsuit in an appropriate small claims court for an amount that does not exceed that courts [sic] jurisdictional limit." (Compl. Ex. 1, at 5.)

Because Plaintiffs can only file suit in a United States district court to obtain the remedies created by the RICO Act, the Court finds that the forum selection clause in this case deprives Plaintiffs of remedies that they are entitled by law to pursue. As a result, the forum selection clause is unreasonable and therefore unenforceable. *See Lloyd's of London*, 94 F.3d at 928. Accordingly, to the extent that Defendants seek dismissal of the Amended Complaint on the basis of the forum selection clause, the Motion to Dismiss will be denied.[3]

## B. Forum Selection: Arbitration

The parties additionally dispute the controlling effect of the Agreements' arbitration provision. The provision provides, in relevant part, as follows:

> *Any claim or dispute arising from or in any way related to the Agreement must be resolved by binding arbitration* in the state where you live instead of a lawsuit. . . . Agreeing to arbitration means that you are waiving your right to a trial by jury and your right to have a court resolve your dispute. You are waiving your right to participate in a class action lawsuit . . . . We both agree that neither you nor we will request the arbitration to be conducted as a class-wide arbitration. We both agree that no arbitrator will have authority to certify a class in the arbitration or conduct class-wide arbitration and that *the arbitrator can only decide disputes between you and us.* If any part of this arbitration agreement is ruled invalid, then any underlying dispute must be resolved by a judge, sitting without jury, in a court of competent jurisdiction, and not as a class action lawsuit.

(Compl. Ex. 1, at 5 (emphases added).)

---

[3] Plaintiffs offer various other arguments as to why the Court should not recognize or enforce the forum selection clause in this case, and why the clause does not control Plaintiffs' claims against all Defendants. (*See* Opp. Mot. Dismiss 19–21.) Because the Court finds that the clause is not enforceable, the Court need not address Plaintiffs' other challenges.

6

The Federal Arbitration Act "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[T]he Act . . . mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Winter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4 (mandating a stay in any suit or proceeding "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration")). "Where the contract contains an arbitration clause, . . . 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Bayer CropScience AG v. Dow AgroSciences, LLC*, No. 2:12cv47, 2012 WL 2878495, at *6 (E. D. Va. July 13, 2012) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

While these principles establish a strong policy in favor of arbitration, such a policy does "not override the clear intent of the parties." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Before a court may stay a case and compel arbitration, it must find that there is in fact "an underlying agreement between the parties to arbitrate." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) (quoting *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997)). The law makes clear that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015).

According to the Fourth Circuit, arbitration should be compelled when: "(i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement." *Id.* "[T]he court decides, as issues of contract law, the threshold questions of whether a party is contractually bound to arbitrate and whether, if so bound, the arbitration provision's scope makes the issue in dispute arbitrable." *Marrowbone Dev. Co. v. District 17, UMW*, 147 F.3d 296, 300 (4th Cir. 1998).

As an initial matter, the Court notes that Plaintiffs do not dispute the validity of the arbitration provision in their Opposition to the Motion to Dismiss. Indeed, Plaintiffs go so far as to concede the existence and enforceability of the arbitration provision with regard to Defendant NHCash. (Opp. Mot. Dismiss 1, n.1.) However, Plaintiffs do contest the existence of a valid agreement to arbitrate with any Defendant other than NHCash, and they correspondingly argue that, because they only entered into the Agreements with NHCash, NHCash is the only Defendant that can enforce the arbitration provision. (*Id.* at 3, 14.) Plaintiffs further contend that the scope of the provision is limited, such that it only controls Plaintiffs' claims against NHCash and therefore Plaintiffs should be allowed to pursue their claims against the other Defendants in this Court. (*Id.* at 7.)

Defendants take the position that the doctrine of equitable estoppel permits the nonsignatory Defendants to enforce the arbitration provision alongside NHCash. (Br. Supp. Mot. Dismiss 11.) Defendants alternatively argue that, even though NHCash is the only Defendant-signatory to the Agreements, the scope of the arbitration provision encompasses "*any* claims related to the Agreement, including Plaintiffs' Agreement-

8

related claims against Defendants who are not themselves parties to the Agreement." (*Id.* at 10.) For the reasons stated below, the Court finds that the doctrine of equitable estoppel is indeed applicable in this case. The Court additionally finds that, even if equitable estoppel were not appropriate, the scope of the arbitration provision is sufficiently broad to encompass Plaintiffs' claims against all Defendants. Accordingly, the provision controls and the parties must arbitrate their disputes.

1. Enforcement of the Arbitration Provision & Equitable Estoppel

The Fourth Circuit has held that a nonsignatory to an agreement containing an arbitration clause may, in two specific circumstances, move to compel arbitration on the basis thereof. *Brantley v. Rep. Mortgage Ins. Co.*, 424 F.3d 392, 395 (4th Cir. 2005); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417–18 (4th Cir. 2000).[4] The first such circumstance arises "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Brantley*, 424 F.3d at 395–96 (alterations and internal quotations omitted) (quoting and applying *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration

---

[4] Plaintiffs argue that the Court cannot apply the test set forth in *Brantley* because in *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624 (2009), the Supreme Court superseded Fourth Circuit law on the issue. As Defendants rightly point out, however, it is unclear that *Carlisle* did so. Additionally, the flurry of cases Plaintiffs cite from outside this circuit are insufficient basis for the Court to disregard post-*Carlisle* precedent from the Fourth Circuit itself. In *Aggaro v. MOL Ship Mgmt Co., Ltd.*, 675 F.3d 355 (4th Cir. 2012), decided three years after *Carlisle*, the Fourth Circuit applied *Brantley* and its equitable estoppel formulation. Therefore, the Court is satisfied that *Brantley* remains good law and proceeds with its analysis on that basis.

9

is appropriate." *Id.* at 396 (alterations and internal quotations omitted). The second circumstance where equitable estoppel is warranted arises "when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* (alterations and internal quotations omitted).

The facts of this case fit both of the qualifying circumstances described above. First, Plaintiffs rely on the terms of the Agreements—specifically the interest rate provisions—in asserting their claims against nonsignatory Defendants SPV, Holdings, and Mello. Without the Agreements, Plaintiffs would have no claims against Defendants. Second, throughout the Amended Complaint, Plaintiffs allege substantially interdependent and concerted misconduct by NHCash—an admitted signatory to the contract (*see* Opp. Mot. Dismiss 1, n.1)—and the nonsignatory Defendants. Plaintiffs allege, *inter alia*, that:

> In an attempt to circumvent state usury and lending statutes, Mellow developed an enterprise comprised of several persons and legally distinct entites, including NHC[ash], [] SPV, and [] Holdings, to make, market, and collect illegal loans. (Compl. ¶ 2.)
>
> Defendants NHC[ash], [] SPV, [] Holdings, and Mellow, together with others not yet known to Plaintiffs, constitute an enterprise hereafter (the "Enterprise") . . . . (*Id.* ¶ 20.)
>
> The Enterprise worked together for, among other things, the common purpose of making and collecting the usurious loans offered to Virginia consumers. (*Id.* ¶ 21.)
>
> Defendants constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise, *i.e.*, to make and collect on loans with excessive interest rates. (*Id.* ¶ 40.)
>
> Defendants, together with other members of the Enterprise . . . marketed, initiated, and collected usurious loans in Virginia. (*Id.* ¶ 43.)

10

> Based on this conduct, . . . NHC[ash], [] SPV, [] Holdings, and Mellow violated the Racketeer Influenced and Corrupt Organization Act ("RICO") . . . . Plaintiffs also allege a class claim against NHC[ash], [] SPV, [] Holdings, and Mellow under Virginia's usury laws. (*Id.* ¶¶ 3–4.)

Plaintiffs allege the same claims against the lone signatory Defendant and the nonsignatory Defendants alike and "employ[] the same allegations as the bases for liability." *Aggaro v. MOL Ship Mgmt Co., Ltd.*, 675 F.3d 355 (4th Cir. 2012). Based on these Agreement-based allegations of interrelated conduct, the Court finds that equitable estoppel is appropriate. *Brantley*, 424 F.3d at 396.[5] Therefore, all of the Defendants are equally entitled to move to compel arbitration in this case.

2. Scope of the Arbitration Provision

Even if the Court were to find that equitable estoppel was not available in this case and that only NHCash was entitled to enforce the arbitration provision, arbitration would still be appropriate for all Defendants because of the scope of the provision.

When addressing questions of arbitrability, courts are required to "give effect to the parties' intentions as expressed in their agreement." *Chorley Enters.*, 807 F.3d at 563 (quoting *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 (4th Cir. 2014)). In doing so, "we apply ordinary state law principles governing the formation of contracts." *Id.*; *see*

---

[5] Plaintiffs additionally argue that the Fourth Circuit "clarified" its *Brantley* test for equitable estoppel in *Am. Bankers Ins. Group v. Long*, 453 F.3d 623 (4th Cir. 2006), and established that courts should only apply equitable estoppel where the signatory-plaintiff attempts to *enforce* the underlying contract, "because 'it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage.'" (Opp. Mot. Dismiss 17–18 (quoting *Am. Bankers*, 453 F.3d at 627).) The Court does not agree with this interpretation of *Am. Bankers*. Although the Fourth Circuit did focus on an underlying breach of contract in that particular case, the court in no way limited the *Brantley* test to such circumstances. Rather, it cited *Brantley* to find that equitable estoppel was appropriate because "if [the signatory defendant] had never issued the Note, the [plaintiffs] would have no basis for recovery against [the nonsignatory defendant], and therefore the plaintiffs' claims "rel[ied] on" the terms of the underlying contract (the Note). 453 F.3d at 630. This language parallels the circumstances of the instant case: had NHCash never issued the Agreement with its allegedly usurious terms, Plaintiffs would have no basis for recovery against the other Defendants. Consequently, the Court rejects Plaintiffs' argument.

11

*also Marrowbone Dev. Co.*, 147 F.3d at 300. Ultimately, however, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

In Virginia, a "contract is construed as written, without adding terms that were not included by the parties." *City of Chesapeake v. States Self-Insurers Risk Retention Grp., Inc.*, 271 Va. 574, 578 (2006) (internal citation omitted). "All rules of construction have but one object, and that is to ascertain the intent of the parties to the instrument to be construed . . . ." *Hamm v. Hazelwood*, 292 Va. 153, 161 (2016). Therefore, "it is [a] court's responsibility to determine the intent of the parties from the language they employ." *Bender-Miller Co. v. Thomwood Farms, Inc.*, 211 Va. 585, 588 (1971).

The parties highlight two different clauses within the arbitration provision and base their arguments regarding the overall scope of the provision upon those clauses. The language at issue is:

> "Any claim or dispute arising from or in any way related to the Agreement must be resolved by binding arbitration in the state where you live instead of a lawsuit;" and

> ". . . the arbitrator can only decide disputes between you and us."

(Compl. Ex. 1, at 5.)

Defendants argue that the broad language in the first sentence quoted above encompasses Plaintiffs' Agreement-related claims against the nonsignatory Defendants. (Br. Supp. Mot. Dismiss 10.) Plaintiffs do not challenge the relatedness of the claims, but instead argue that the clause reading ". . . the arbitrator can only decide disputes between you and us" modifies Defendants' highlighted language and demonstrates the parties'

12

clear intent to limit the scope of arbitrable issues to disputes between Plaintiffs and NHCash only. (Opp. Mot. Dismiss 9–12.) Because an arbitration provision's scope is a matter of contract interpretation, a court must apply state law principles in any attempt to resolve the ambiguity. *Chorley Enters.*, 807 F.3d at 563. In Virginia, contract interpretation principles "dictate[] that words or terms should be understood by reference to those that accompany them" when the words or terms at issue are ambiguous. *Resource Bank v. Progressive Cas. Ins. Co.*, 503 F. Supp.2d 789, 796 (E.D. Va. 2007) (citing *Andrews v. Am. Health & Life Ins. Co.*, 236 Va. 221 (1988)).

In support of their position, Plaintiffs point to page one of the Agreements, which reads:

> When you enter into an Open-end Credit Account from nhcash.com ("nhcash.com," "we," "us"), . . . .

(Compl. Ex. 1, at 1.) Plaintiffs assert that this parenthetical definition of "us" is dispositive, and it means that the "you and us" language in the arbitration provision can only be read to include nhcash.com (NHCash), not the other Defendants. This argument fails, for two reasons.

First, Plaintiffs fail to acknowledge that page two of the Agreements includes a different parenthetical definition of "us." This provision reads:

> "This . . . Open-end Credit Account Agreement ("Agreement") is made between nhcash.com, LLC . . . and any person to whom this Agreement, or the indebtedness created under this Agreement may be assigned ("nhcash.com," "we," "us" and "our") and each person who is issued an Open-end Credit Account . . . ."

(*Id.* at 2.) Accordingly, page one of the Agreements includes one definition of "us," while page two includes another. As such, it cannot be said that the plain language of the

13

provision stating an arbitrator's authority to disputes "between you and us" is dispositive of the scope of arbitrable issues. Rather, the conflict between the above-mentioned portions of the Agreement and the arbitration provision renders the scope of the provision as a whole ambiguous.

Second, the language that purportedly limits the scope of arbitrable issues to disputes "between you and us" falls at the end of several sentences prohibiting class-action claims. In full, the section reads:

> You are waiving your right to participate in a class action lawsuit . . . . We both agree that neither you nor we will request the arbitration to be conducted as a class-wide arbitration. We both agree that no arbitrator will have authority to certify a class in the arbitration or conduct class-wide arbitration and that the arbitrator can only decide disputes between you and us.

(*Id.* at 5.) When read in this context, the phrase "between you and us" appears to be merely intended to reemphasize the general point that class actions are prohibited under the Agreement and that multiple borrowers may not band together to pursue claims arising from the Agreement, even in arbitration. Contrary to Plaintiffs' assertion, it is not clear that this language is intended in any way to limit the primary terms of the arbitration provision, which puts would-be plaintiffs on notice that "any claim or dispute arising from or in any way related to the Agreement must be resolved by binding arbitration . . . ." (*Id.*)

In light of the this contextual analysis, and cognizant of the rule that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25, the Court finds that the scope of the arbitration provision encompasses Plaintiffs' claims against all Defendants, not just those against NHCash. Therefore, even if NHCash were the only Defendant capable of

14

enforcing the arbitration provision, arbitration would still be appropriate for all of Plaintiffs' claims against all of the Defendants. The Court will accordingly stay the case and order the parties to engage in arbitration. *See* 9 U.S.C. §§ 3–4; *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22.

## IV. CONCLUSION

Based on the foregoing, the Court will deny Defendants' Motion insofar as it seeks dismissal of the Amended Complaint, but it will grant the Motion to the extent that Defendants seek to compel arbitration. Accordingly, the action will be stayed pending arbitration.[6]

An appropriate order will accompany this Memorandum Opinion.

The clerk is directed to send a copy of this Memorandum and the accompanying Order to all counsel of record.

/s/
Henry E. Hudson
United States District Judge

Date: Sept 12, 2017
Richmond, VA

---

[6] Given that Defendants' Counterclaim (ECF No. 18) was asserted as a contingency in the event that the parties were not compelled to arbitrate, and given that the counterclaim arises directly from the terms of the Agreements and therefore is subject to the Agreements' arbitration provision, these issues should also be resolved in the course of arbitration.

15